IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SARAH M. DIXON,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>    Defendant. | 8:18CV343<br><br>MEMORANDUM<br>AND ORDER |

  This matter is before the Court on plaintiff Sarah M. Dixon's ("Dixon") Motion for an Order Reversing the Commissioner's Decision (Filing No. 14) seeking judicial review of the final decision of defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner"), denying Dixon's claim for benefits under Title II and Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.* Having filed a Motion to Affirm the Commissioner's Decision (Filing No. 18), the Commissioner resists Dixon's motion. For the reasons stated below, the Court affirms the Commissioner's decision.

## I. BACKGROUND
### A. Facts

  Dixon has been diagnosed with ankylosing spondylitis and fibromyalgia. She was born on April 19, 1984, has a high-school diploma, and has previously worked as a customer-service representative and a telephone solicitor. On January 20, 2015, Dixon protectively applied for disability benefits and supplemental-security income, alleging a disability beginning on September 26, 2013.

  The Social Security Administration ("SSA") denied Dixon's claims on September 4, 2015, and on reconsideration on November 5, 2015. On Dixon's request, an SSA Administrative Law Judge ("ALJ") conducted a hearing on June 1, 2017, at which Dixon testified and was represented by counsel.

### B. The ALJ's Determination

After the hearing, the ALJ undertook the familiar five-step sequential process for determining disability. *See* 20 C.F.R. §§ 404.1520 and 416.920. During that process, the ALJ asks:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014).

The ALJ found Dixon met the first two steps: she had not engaged in a substantial gainful activity since the alleged disability-onset date and she is severely impaired. Specifically, the ALJ found Dixon "has the following severe impairments: ankylosing spondylitis, fibromyalgia, and obesity."

At Step Three, the ALJ determined Dixon's impairment or combination of impairments do not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1525, 404.1526, 416.925, and 416.926. The ALJ expressly considered Listing 1.04 for disorders of the spine and did not find that Dixon has a spine disorder with the requisite characteristics to meet or equal that listing.

The ALJ next considered Dixon's residual functional capacity ("RFC"). The ALJ concluded Dixon could perform sedentary work, *see* 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the "ability to shift between sitting and standing every thirty minutes for one to two minutes." The ALJ further determined Dixon could (1) "occasionally stoop, crouch, and climb ramps or stairs," (2) occasionally rotate, flex, and extend her neck, (3) "have no more than frequent exposure to extreme heat or cold," (4) "never kneel, crawl, or climb ladders, ropes, or scaffolds," and (5) "never be exposed to vibration or workplace hazards" like unprotected heights or moving machinery ("RFC finding").

In making the RFC finding, the ALJ considered (1) Dixon's own reports about her symptoms, (2) documentation from Dixon's mother supporting her symptoms, (3) Dixon's activities, (4) findings from Dixon's treating and consulting physicians, and (5) diagnostic studies. Based on those considerations, the ALJ determined Dixon's complaints about her symptoms were not entirely consistent with her daily activities and the objective medical evidence. Although a medical-source statement submitted by John Hurley, M.D. ("Dr. Hurley"), one of Dixon's treating physicians, supported some of Dixon's allegations, the ALJ afforded less weight to parts of that statement as overly vague and unsupported.

Moving to Step Four, the ALJ determined Dixon could perform her past relevant work as a customer-service representative and telephone solicitor. Accordingly, the ALJ found Dixon is not disabled as defined under the SSA. *See* §§ 404.1520(f) and 416.920(f).

Dixon requests the Court reverse the ALJ's decision because she believes the ALJ: (1) erred in evaluating "Ms. Dixon's Fibromyalgia at Step 3 and while evaluating Ms. Dixon's subjective complaints," (2) "failed to provide good reasons for the weight afforded" to Dr. Hurley's opinions, and (3) "was an inferior officer not appointed in a constitutional manner."

## II. DISCUSSION

### A. Standard of Review

The Court will affirm an ALJ's decision "if it is supported by substantial evidence on the record as a whole." *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011); *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the [ALJ's] conclusions." *Nash v. Comm'r*, 907 F.3d 1086, 1089 (8th Cir. 2018) (quoting *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007). The Court considers evidence that detracts from and supports the ALJ's decision. *Id.* If the Court "finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must

affirm the ALJ's decision." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009)).

### B. Fibromyalgia

Social Security Ruling 12-2p ("SSR 12-2p"), 77 Fed. Reg. 43640-01 (2012), explains how the SSA evaluates fibromyalgia in the disability analysis. Dixon alleges the ALJ erred in assessing her fibromyalgia claim by not following SSR 12-2p, "leading to Step Three and credibility evaluation errors." Specifically, Dixon alleges remand is warranted because the ALJ: (1) failed to evaluate her fibromyalgia claim under SSR 12-2p and Listing 14.09D at Step Three and (2) over-relied on the lack of objective evidence to support her subjective complaints and failed to realize fibromyalgia symptoms wax and wane in reaching the RFC finding.[1]

#### 1. Step Three

At Step Three, the claimant bears the burden to establish that her impairment meets or equals a listing. *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016). The listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, are descriptions of physical and mental impairments defined by several specific signs, symptoms, or test results. Fibromyalgia is not a listed impairment, so the question is whether fibromyalgia "medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment." SSR 12-2p, 77 Fed. Reg. at 43644. To do so, "a claimant 'must present medical findings equal in severity to all the criteria for the one most similar listed impairment.'" *Stoner*, 818 F.3d at 370 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

---

[1]Dixon also criticizes the ALJ for not expressly citing SSR 12-2p. The Court finds the ALJ did not err by not explicitly referencing SSR 12-2p. As explained below, the ALJ's opinion was consistent with SSR 12-2p and omitting a specific reference to that ruling had no impact on the decision's outcome. *See Warrior v. Colvin*, No. 4:13-CV-00487-NKL, 2014 WL 1374054, *3 (W.D. Mo. April 8, 2014) (reaching the same conclusion).

4

In this case, after finding Dixon had the severe impairments of ankylosing spondylitis, fibromyalgia, and obesity, the ALJ determined Dixon's impairments or combination of impairments did not meet or equal any listing. The ALJ specifically found Dixon does not meet Listing 1.04 for spine disorders, because the evidence did not show her nerve root or spinal cord was compromised with "neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raise testing."

Dixon contends the ALJ's analysis was flawed because the ALJ did not "evaluate the most relevant Listing for medical equivalence at Step Three, Listing 14.09D, and did not address any Listing in particular for medical equivalence for fibromyalgia." Relying on SSR 12-2p's directive to determine whether fibromyalgia "medically equals a listing (for example, listing 14.09D . . .)," Dixon asserts remand is warranted. It does not appear from a review of the record that Dixon specifically requested the SSA to evaluate her fibromyalgia symptoms under Listing 14.09D during the administrative process.[2] And the Commissioner argues the ALJ was not required to expressly consider Listing 14.09D and did consider the most relevant listing given Dixon's complaints. The Court agrees.

SSR 12-2p does not mandate an ALJ to specifically refer to Listing 14.09D whenever an individual with fibromyalgia alleges a disability. A plain reading of SSR 12-2p shows that an ALJ must consider whether fibromyalgia "medically equals *a* listing," citing Listing 14.09D as one such possible example. SSR 12-2p, 77 Fed Reg. at 43644 (emphasis added). Accordingly, the ALJ did not err simply by not explicitly considering Listing 14.09D. *See Iwan v. Comm'r*, No. 17-CV-97-LRR, 2018 WL 4295202, *4-5 (N.D. Iowa Sept. 10, 2018) (reaching the same conclusion and collecting cases).

---

[2]In her request for reconsideration, Dixon did assert the ALJ erred in not evaluating her *ankylosing spondylitis* against Listing 14.09D, but she did not argue her fibromyalgia was most similar to that listing.

5

The ALJ appropriately considered the most relevant listing—Listing 1.04 for spine disorders. Dixon complained of pain throughout her body, but specifically, her back and neck. And medical findings revealed Dixon experienced reduced range of motion in her cervical spine. Thus, Listing 1.04 was clearly more similar than Listing 14.09D, which deals with inflammatory arthritis, given Dixon's spinal complaints. After "consider[ing] all of [Dixon's] impairments individually and in combination," including her fibromyalgia, the ALJ found no evidence that those impairments "reach the level of severity contemplated in the Listings." The Court finds the ALJ's determination is supported by substantial evidence, and remand is not warranted on this issue. *See Teague*, 638 F.3d at 614.

Even if the Court assumes SSR 12-2p required the ALJ to consider Listing 14.09D, the ALJ's failure to expressly consider it was not reversible error because Dixon has not shown her impairments medically equal that listing. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 § 14.09D (requiring manifestations of inflammatory arthritis with at least two constitutional symptoms (severe fatigue, fever, malaise, or involuntary weight loss) and limitations in daily living, socializing, or completing tasks in a timely manner due to deficient concentration, persistence, or pace); *see also Vance v. Berryhill*, 860 F.3d 1114, 1118 (8th Cir. 2017) ("An ALJ's failure to address a specific listing . . . is not reversible error if the record supports the conclusion."). Substantial evidence in the record supports the conclusion that Dixon's impairments do not medically equal Listing 14.09D. First, there is no evidence Dixon experienced a fever or involuntary weight loss. Dixon also denied fatigue on multiple occasions, and even when Dixon did complain of fatigue or malaise, those complaints are questionable given the ALJ doubted her persuasiveness (as discussed below).

Dixon's own admissions on her daily living also demonstrates her daily activities and socializing were not limited. Further evidence, such as the opinion of Holly Filcheck, Ph.D, who conducted a consultative mental-status examination on Dixon, shows Dixon's memory is average and her concentration and attention are adequate. Thus, substantial

evidence supports the ALJ's conclusion that Dixon's limitations in concentrating, persisting, or maintaining pace was not more than mild. Dixon has not met her burden of showing her impairments equal Listing 14.09D, and remand is not warranted.

### 2. RFC Finding

Dixon next contends this case must "be remanded for proper evaluation of her subjective complaints considering [SSR] 12-2p." Dixon faults the ALJ for relying too much "on the lack of objective evidence to support [her] complaints" and failing "to realize that fibromyalgia symptoms are expected to wax and wane." The Commissioner argues the ALJ properly evaluated Dixon's fibromyalgia and discounted her subjective complaints as inconsistent with the record as a whole.

An ALJ may discredit a claimant's subjective complaints where "the evidence as a whole is inconsistent with the claimant's testimony." *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (quoting *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006)).

> [T]he ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984): (i) the claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the dosage, effectiveness, and side effects of medication; and (v) the claimant's functional restrictions.

*Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). If an ALJ conducts her analysis under 20 C.F.R. §§ 404.1529 or 416.929, she need not expressly cite the *Polaski* factors because the regulations mirror those factors. *Vance*, 860 F.3d at 1120. Although an ALJ must consider objective evidence, an ALJ may not discount "a claimant's subjective complaints *solely* because the objective medical evidence does not fully support them." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (emphasis added) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)). The Court defers to the ALJ's assessment of the claimant's subjective complaints if that assessment is supported by good reasons and substantial evidence. *Nash*, 907 F.3d at 1090.

SSR 12-2p also directs ALJs to consider objective medical evidence when determining whether an individual with fibromyalgia is disabled. 77 Fed. Reg. at 43642. If objective medical evidence is lacking, the ALJ considers all the evidence in the record, including the individual's daily activities, medications and treatments, and statements by other people about the individual's symptoms. *Id.* at 43643. To assess a claimant's subjective complaints, SSR 12-2p refers ALJs to Social Security Ruling 96-7p, outlining the same factors and considerations of objection evidence as *Polaski* and §§ 404.1529 and 416.929. *Id.* Because fibromyalgia symptoms may wax and wane, SSR 12-2p instructs ALJs to consider "a longitudinal record" to account for fibromyalgia's varying symptoms. *Id.* at 43644.

In this case, Dixon suggests the role of objective evidence diminishes where an individual with fibromyalgia alleges a disability, and the ALJ failed to consider the nature of objective evidence and fibromyalgia. Dixon is mistaken.

Although an ALJ may not discount a claimant's subjective complaints solely because they are not substantiated by objective evidence, *see Renstrom*, 680 F.3d at 1066, SSR 12-2p says the SSA will review objective medical evidence in cases involving fibromyalgia. And an ALJ may discredit subjective complaints that are inconsistent with evidence in the record—including objective evidence. *See id.*

Here, the ALJ conducted her analysis under §§ 404.1529 and 416.929 and determined inconsistencies between Dixon's complaints and the record undermined Dixon's persuasiveness. This determination was sound and supported by substantial evidence.

First, the Court agrees the objective medical evidence did not fully support Dixon's allegations of disabling symptoms and limitations. For example, treatment records of Tyrus Soares, M.D. ("Dr. Soares"), one of Dixon's treating physicians, expressed concern that Dixon was developing maladaptive pain behaviors and symptom amplification. *See*

*Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (recognizing a claimant lacked credibility when she exaggerated her symptoms). Dr. Soares observed that Dixon was well-nourished, well-groomed, and in no acute distress with normal cardiovascular and respiratory examinations. Dr. Soares informed Dixon she is "more functional than she gives herself credit for."

Meryl Severson, M.D. ("Dr. Severson"), a consulting physician who examined Dixon, observed that Dixon had a normal gait and steady balance, could get on and off the examination table with a step, was fully alert and oriented, and demonstrated nearly full motor strength. Dr. Severson confirmed Dixon's fibromyalgia with eight positive tender points but also noted Dixon sat throughout the history portion of her examination without frequently repositioning herself. With that, Dr. Severson opined that Dixon could carry and hold light objects, walk very short distances, and climb a few stairs with a handrail.

Dixon faults the ALJ for noting medication managed Dixon's ankylosing spondylitis "well" without addressing its impact on her fibromyalgia. But the ALJ weighed Dixon's combination of impairments, so managing her ankylosing spondylitis is material to her disability analysis.

Further, substantial evidence supports the ALJ's determination that other record evidence also contradicted Dixon's allegations. The ALJ found Dixon's activities less limited than one would expect given her complaints. Specifically, the ALJ noted Dixon admits she (1) tends to her own hygiene, (2) manages her medications, medical appointments, and finances, (3) operates vehicles, (4) shops, (5) prepares meals for herself and her family, (6) lives with and maintains a relationship with her family, (7) watches and follows television shows, and (8) uses computers and phones. The ALJ also pointed out that Dixon was jumping in a bounce house in July 2016.

Dixon downplays the significance of her daily activities, asserting "there is no inconsistency when a fibromyalgia sufferer alleges disability due to her symptoms on her

9

bad days, when she may be able to engage in more activities on her good days." But her daily activities are important considerations when assessing her persuasiveness. *See Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015) (finding that a fibromyalgia sufferer's daily activities, in conjunction with other inconsistencies with the record, detracted from her persuasiveness).

Moreover, the ALJ properly considered a longitudinal record as directed by SSR 12-2p—receiving medical-record exhibits dating back to 2010—which allowed the ALJ to account for any waxing and waning in Dixon's fibromyalgia symptoms as they relate to her daily activities and otherwise.

The ALJ's decision is consistent with SSR 12-2p. The ALJ did not rule out Dixon's subjective complaints solely based on a lack of objective medical evidence to support them. Instead, the ALJ found Dixon less persuasive because her complaints were inconsistent with the record as a whole. The Court finds the ALJ's decision is "supported by good reasons and substantial evidence," and declines Dixon's invitation to reweigh the evidence in this case. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006); *see also Chaney v. Colvin*, 812 F.3d 672, 677 (8th Cir. 2016) (finding remand is not warranted if the record supports the ALJ's determination).

### C. Treating Physician

Next, Dixon argues the ALJ's decision should be reversed and remanded because the ALJ failed to provide good reasons supported by substantial evidence for not affording controlling weight to Dr. Hurley's opinion. The Commissioner contends the ALJ properly gave Dr. Hurley's opinion less weight because it was conclusory.

A treating physician's opinion should be given controlling weight when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Nowling v. Colvin*, 813 F.3d 1110, 1122-23 (8th Cir. 2016) (quoting *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015)); *see also* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). That weight, however, is

neither inherent nor automatic. *Cline*, 771 F.3d at 1102. A treating physician's opinion may be discounted "where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* at 1103 (quoting *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012)).

A treating physician's opinion is entitled to no greater weight than another physician's when it "consists of nothing more than vague, conclusory statements." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (quoting *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996)). A treating physician's opinion may be similarly discredited if it is "inconsistent or contrary to the medical evidence as a whole." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011). In any case, the ALJ must always give good reasons for the weight afforded. *Andrews*, 791 F.3d at 929.

Dr. Hurley began treating Dixon in November 2016. He submitted a medical-source statement to the SSA in support of Dixon's claims, opining Dixon could only sit for thirty minutes at a time, would need to frequently change positions, and would be restricted in bending and twisting. Dr. Hurley also indicated Dixon's ability to walk would vary daily (sometimes with less than two hours per workday) and she would miss more than three workdays per month due to her conditions.

The ALJ accorded partial weight to Dr. Hurley's opinion on Dixon's range of sedentary exertion but afforded less weight to his opinion regarding her ability to stand and walk because it was overly vague. The ALJ also gave less weight to Dr. Hurley's opinion Dixon would be absent three workdays per month because no reliable evidence in the record supported it.

Taking the standing-and-walking limitation first, it is well-established that vague, conclusory statements are of little evidentiary value. *See, e.g.*, *Wildman*, 596 F.3d at 964 (finding the ALJ properly discounted a treating physician's opinion that was conclusory,

11

cited no medical evidence, and provided no elaboration). In his medical-source statement, Dr. Hurley simply wrote, "The amount of time that [Dixon] can walk I would think would vary from day to day. I do think that there would be some days when she would not be able to walk more than two hours. There may also be days when she could walk slightly more than that." Dr. Hurley did not explain the basis for his opinion or cite any supporting medical evidence. Under these circumstances, the ALJ afforded appropriate weight to the opinion. *See Cline*, 771 F.3d at 1104 (finding it unnecessary to "patch the holes in a treating physician's porous opinion" or give that opinion controlling weight).

Dixon argues if Dr. Hurley's opinion was too vague, the ALJ should have asked for clarification. ALJs have a duty to fully and fairly develop the record, including to ensure the record includes evidence from a treating physician. *See Strongson v. Barnhart*, 361 F.3d 1066, 1071-72 (8th Cir. 2004). But an ALJ need not seek clarification "from a treating physician unless a crucial issue is undeveloped." *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). Here, the ALJ considered medical assessments from numerous physicians, including at least one other treating physician, and numerous other records. The record was fairly developed, and no clarification was necessary. *See id.*

Dixon further contends the ALJ erred in discounting Dr. Hurley's opinion on absences, arguing the record supports Dixon missing three workdays per month. Dixon explains the following occasions would account for absences: (1) a Remicade infusion every six weeks, (2) time during the week after her Remicade infusion while she waited for it provide relief, and (3) bad days even after Remicade became effective.

Dr. Hurley, however, did not offer any of those explanations in his medical-source statement. He only provided, "I do think that it is more than likely that [Dixon] would miss at least three days of work per month due to her ankylosing spondylitis." The Court agrees with the ALJ that the record reveals no reliable evidence, from Dr. Hurley or otherwise, to support his opinion. *See Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005) (discounting

12

a treating physician's opinion that a claimant could only stand for two hours and sit for four hours in a workday because it was not supported by any medical evidence).

### D. The Appointments Clause

Finally, Dixon argues this Court must vacate the ALJ's decision because the ALJ is an inferior officer not properly appointed under the Appointments Clause of the U.S. Constitution. *See* U.S. Const. art. 2, § 2, cl. 2. Dixon asks the Court to remand her case to the SSA so a properly appointed ALJ may hear her case. *See Lucia v. SEC*, 585 U.S. ___, ___, 138 S. Ct. 2044, 2055 (2018) (explaining that a new hearing before a properly appointed official is appropriate after an appointments-clause violation).

Not addressing whether SSA ALJs are inferior officers under the Appointments Clause, the Commissioner argues that Dixon cannot prevail on her Appointments Clause claim because she never raised it to the SSA during the administrative process. According to the Commissioner, Dixon forfeited (or waived) her challenge as a result. *See Lucia*, 585 U.S. at ___, 138 S. Ct. at 2055 (recognizing that a party "who makes a timely challenge . . . is entitled to relief" (quoting *Ryder v. United States*, 515 U.S. 177, 182 (2018))); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (finding that an appointment irregularity should be set aside as a nullity in the absence of a timely objection); *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 798 (8th Cir. 2013) (finding a party can forfeit its Appointments Clause argument by not raising it at the administrative level).

Relying on *Mathews v. Eldridge*, 424 U.S. 319, 329 n.10 (1976), Dixon attacks the Commissioner's position. Dixon argues the cases cited by the Commissioner are inapposite because this case presents a constitutional claim for which the SSA lacks the authority to grant any relief. In short, Dixon argues it would have been futile to raise her Appointments Clause challenge at the administrative level, so raising it here for the first time is timely.

This Court has already considered the arguments raised by Dixon and the Commissioner. *See Millard v. Berryhill*, 8:18CV452, 2019 WL 2502876, *7-8 (D. Neb. June 17, 2019). There, the Court concluded the claimant failed to adequately explain why she could not have raised her Appointments Clause challenge at the administrative level to preserve the issue for judicial review, even if the SSA could not resolve it. *See id.* And the Court was not swayed by the argument under *Eldridge*, 424 U.S. at 329 n.10. The Court similarly concludes here that Dixon has failed to show her Appointments Clause challenge warrants remand—Dixon forfeited that claim and has failed to show sufficient reason to excuse that forfeiture.

### III. CONCLUSION

The Court finds the Commissioner's final decision denying Dixon's claim for benefits under the Act should be affirmed. Accordingly,

IT IS ORDERED:
1. Sarah M. Dixon's Motion for an Order Reversing the Commissioner's Decision (Filing No. 14) is denied.
2. The Commissioner's Motion to Affirm the Commissioner's Decision (Filing No. 18) is granted, and her decision denying benefits is affirmed.
3. Dixon's Complaint (Filing No. 1) is dismissed with prejudice.
4. A separate judgment will issue.

Dated this 19th day of July 2019.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge